hear the next case, United States v. Carosella. May it please the court, my name is Barclay Johnson. I'm an attorney with the Federal Defender's Office in Vermont. I'm pleased to be here on behalf of Mr. Carosella. I'm not sure. Our issue is quite as interesting as the free speech First Amendment issues, but our narrow issue in this case is quite narrow, and it is really only about whether Mr. Carosella is eligible for a reduction, a retroactive reduction. It's not about whether he should receive one, ultimately, or how small. But doesn't the rule, the 1B1.10b1, say apply the amendment as if the new rule were in effect at the time of the original sentence? We have these other two injunctions, the two relevant . . . Isn't that what it says? I mean, shouldn't we just be applying the new rule, or doesn't the district court, isn't it appropriate for the district court to apply the new rule that lowers the heroin distribution conspiracy number, and then plug it in to the guidelines that were in place? We have these two narrow subsequent instructions that tell us exactly, tell the district court exactly how to do that, and that is on the one hand, the court shall substitute only the retroactive amendment or guideline provision, and then on the other hand, that it shall leave all other guideline application decisions unaffected. What about things that aren't decisions? In other words, this seems to me analogous to the situation where the reduction moves the guideline level below the threshold where you can get three points for acceptance of responsibility. In that case, you'd be suggesting that it's a separate . . . the district court made a separate guideline decision in the previous sentencing to give three points for acceptance of responsibility, and that should stay in place even after the reduction which moves the base offense level down below the threshold for that? I think so, for a couple of reasons. One is, for example, the Seventh Circuit's decision says, look, all this provision . . . You're rewriting the rules then? You would be rewriting the rules? I . . . You would not be following . . . I mean, the district court here followed the same analysis, the same formula, but took it down two levels because of the reduction, and in the end, it was the same. Perhaps it's helpful to take a step back and differentiate between this initial . . . There are two steps in the analysis of whether someone should receive a reduction. One is, are they eligible? The second is, should they get a reduction? I think the points the court's identifying is . . . No, no, no. I'm talking about eligibility. I mean, the rules say, because of the grouping rules, that you would then . . . It changes because of the differential changes, but the court is following precisely the rules that it applied back then, but because their starting point is a little bit different, the different steps are triggered, but the district court is not changing the rules. It's following the same rules. Is it not? I don't think so, because then it's not . . . We have these two very specific admonitions, injunctions from the Sentencing Commission, and they're mandatory in a 35-82 proceeding, unlike in a full initial resentencing. In the full initial resentencing, we have a whole lot of other rules that we have to apply, but here we have this very narrow window. Is this person eligible? This Sentencing Commission says, substitute the retroactive amendment, leave everything else unaffected. Well, no. It says, don't make any different decisions, and what I'm suggesting is there's a difference between decisions that the district court has made, like, well, I think on balance, it's a close call, but I'm not going to find that there was a gun, and then doesn't apply that enhancement, which is irrelevant to this decision about the offense level for the drugs. District court can't go back and revisit that and say, gee, now that he's getting this break on everything else, really, I should go back and there's a close call. I think maybe I should give him the gun enhancement. You can't do that. But there's no decision being made here, just as a matter of the operation of law. Once you plug in this new guideline, then various calculations automatically follow, don't they? There's no decision made about how the grouping rules apply, and there's certainly no different decision being made about how the grouping rules apply. The grouping rules apply the same way. It's a formula, but the formula is affected once you substitute the new number for the old, so why does that come under that rule, and what would be the purpose of having that be the rule? I think they follow automatically, but they're in a full sentencing, but we leave all other guideline application decisions unaffected. We think each of those steps, whether it's acceptance of responsibility, grouping rules, what have you, is a application decision. It's . and they're not presented as application decisions by the guideline, by the sentencing commission. They're not by the district judge. In other words, there are provisions in place that operate at a certain level, and when that level has changed, then those provisions change. In this case, the robberies get an extra half point that they wouldn't have gotten otherwise. That was a determination that they made. They wouldn't have gotten if the district judge had not made that determination. Isn't this a prohibition on, in effect, resentencing and revisiting all those questions that came up at the original sentencing? I don't think so. I think it's a very narrow admonition to the sentencing court to only substitute the guideline, the retroactive decision, and to leave everything else the same. I think that Dillon, if you look at Dillon in its concluding paragraphs, the claim there was, well, the court should have gone back and corrected some of the errors that it made when it sentenced this person, and the Supreme Court said, no, you can't do that because of this prohibition that says leave all other guideline application decisions unaffected. This is not correcting errors that were made. This is applying the grouping rules to the sentence, to the base offense level that you've now arrived at for drugs. It seems to me that in order to faithfully carry out the admonition that you're just supposed to go back to the original guideline and put in the guideline, that is very different from making decisions and in effect resentencing based upon new considerations. I think they're very similar, though, if you look at the Supreme Court has said, you can't correct errors, and I think functionally there's no principled distinction between an interpretation of 1B.1.10. If you look at the sentencing chart itself, you look at the grid, last time you made a decision, you might say, the judge made a decision to look on the chart and find level 28, criminal history category one, there is the number. Now it's level 26. You have to look at the right cell in the chart, right? Because that's the mechanical result of calling it level 26 rather than level 28. That's clear, right? You don't have to make the same sentence because that was a separate decision that you made. You're just doing a mechanical task to look at the chart and get the right cell. I think it breaks down at that point. I think what I'm suggesting is there's no distinction. It's not possible to arrive at a principled distinction between an guideline application error from the original sentencing in such a proceeding because of the provisions, prohibition, or injunction that you must leave all other guideline application decisions unaffected and an interpretation that says, nevertheless, it's fine to redo the whole calculation to account for, as the court says, these other unanticipated guideline application decisions, but that's okay notwithstanding the fact that the guideline 1B1.10 says leave all other guideline application  . What is the purpose behind the prohibition of not going back and revisiting decisions? What is the purpose? The purpose is not to do that. The purpose is just to apply, but not to resentence. Let's hear from the government. You have some time for rebuttal. Good morning, Your Honors. Paul Van de Graaff, AUSA, from Vermont. The plain meaning of 1B1.10 requires the district judge to do a recalculation of the sentencing range based on the amendment. And the government's position, which I think I heard from Judge Lynch a little bit in their question, is that this recalculation itself is not a guideline application decision covered by the last sentence of 1B1.10b1. And I think there's three reasons that you should adopt that proposition. First, this Court's prior decisions addressing 1B1.10 endorse the district court's analysis and really reject the appellant's analysis. Let me begin with the Rios case, a decision written by Judge Walker. There, the Court said that new findings were allowed to increase a guideline range because of findings that were not made at the original sentencing. And those new findings could support a recalculation of the guidelines that would mean that there would be no eligibility for a new sentence. And in the government's position, if the sentencing court has an obligation to make necessary new findings without violating the last sentence of 1B1.10, it certainly doesn't run afoul of it by doing a new calculation. I also wanted to cite to the Court a case that we did not cite in our brief, the Dury case at 824 Fed Third 299 from 2016. There, this Court addressed the possibility of a second reduction. The Court recalled there were two different reductions of the guidelines relating to drugs. The first was the crack reduction. The second was a broader drug reduction. And the Court there held that the eligibility would be based on the sentence the defendant was serving, not the original sentence. There, the defendant got a reduction from the first crack amendments. And the Court said, affirmed the district court's decision not to allow eligibility for the second reduction. And there, it was just like this. The grouping rule meant that his guidelines did not change in spite of the lowering of the drug guideline. And it was a similar kind of thing with another group that affected the grouping calculation. And there, this Court held that the defendant was not eligible. And, of course, we've always cited the Aguiar case in our briefs. Other circuits, second, other circuits have more directly analyzed this issue. And we've cited those cases in our brief, including the Tolliver case, which follows up on the question that Judge Lynch asked. That is, if the overall range dropped below 16 before acceptance of responsibility, would you still be entitled to three points? And the Eleventh Circuit said, no, that would make no sense. You'd only be getting the two-point reduction. And finally, there's really no case law support at all for the appellant's position. The Dillon case that the defendant cites, of course, didn't even address this issue. And at the end, where my adversary is talking about the mistake issue, that's a different issue. That's the issue of a defendant coming in and trying to say, whether I'm, in fact, a mitigating role or what my level is. And there, or the cost of the government. And there, the Dillon Court said that kind of re-decision or new decision isn't permitted. In sum, Your Honor, the government urges the Court to reject Mr. Carousel's novel and unsupported reading of the guidelines. Unless the Court has any questions. Thank you. Thank you. Mr. Johnson, any rebuttal? Yes, thank you. I think that the government gives Dillon a short shrift. The issue really is the same. Dillon clearly says in its concluding paragraphs that it's not possible to, in such a limited proceeding for the court, for a district court, to correct guideline application errors because of the prohibition or injunction that a court must leave all other guideline application decisions unaffected. I think there's just not any reason to think that if you can't fix legal errors in such a 3582 proceeding, there's no reason to conclude that you can also redo, change, or in the government's words, use a fresh, arrive at a fresh guideline application calculation. Rios, I think, is possible. The rule of Rios is possible because 1B1.10 doesn't say don't find new facts. It says leave all other guideline application decisions unaffected. I think Dillon also shows us where cases such as Coghlan, the Seventh Circuit case, the government relies on error and aren't faithful both to 1B1.10 and to Dillon. Coghlan says that the limitation just means that a court can't revisit factual decisions, but that redoing the whole guideline calculation is fine. Again, it's just not what 1B1.10 says. The provision is clearly talking about legal guideline application decisions when it says on the one hand first you substitute only the retroactively changed guideline application, guideline provision, and then you must leave all other guideline application decisions unaffected. If the court doesn't have any more questions, we'll rely on our briefs. Thank you. Thank you. We'll reserve decision. The final two cases are on submission. I'll ask the clerk to adjourn. Court is adjourned.